**UNITED STATES BANKRUPTCY**
**COURT DISTRICT OF NEW JERSEY**

By: Esther Wilson
127 Bessida St
Bloomfield, NJ 07003
EstherHWilson@gmail.com
732.579.2691

| In Re: | Bk. Case No: 23-21840-RG |
|---|---|
| Wilvin J Mateo-Hernandez<br>Debtor | |
| Esther Wilson<br>Plaintiff<br>v.<br>Wilvin J Mateo-Hernandez<br>Defendant | |

## COMPLAINT FOR NON-DISCHARGEABILITY PURSUANT TO
### 11 U.S.C. §523 (a)(2), 11 U.S.C. §523 (a)(4), 11 U.S.C. §523 (a)(6), 11 U.S.C. §1328 (a)(4)

1.  Plaintiff, Esther Wilson, files this Complaint pursuant to 11 U.S.C. §523 (a)(2), 11 U.S.C. §523 (a)(4), 11 U.S.C. §523 (a)(6), 11 U.S.C. §1328 (a)(4) and alleges the following in support of the requested relief:

2.  This Court has jurisdiction pursuant to 28 U.S.C. 1334 and 28 U.S.C §157.

3.  Venue is properly laid in this district pursuant to 28 U.S.C. §1409.

4.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

### INTRODUCTION

5. This action arises in connection with a civil matter pending in New Jersey Superior Court, ESX-L-000999-22.

6. The debtor owes Esther Wilson compensatory damages in the amount of $50,000.

7. The debtor owes Esther Wilson punitive damages, amount to be determined up to $350,000.

8. Esther Wilson seeks a judgement of non-dischargeability of these claims.

### PARTIES

9. Plaintiff, Esther Wilson, is the previous girlfriend of the Debtor, and an unsecured creditor of the debtor.

**UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY**

By: Esther Wilson
127 Bessida St
Bloomfield, NJ 07003
EstherHWilson@gmail.com
732.579.2691

In Re:                                                      Bk. Case No: 23-

Wilvin J Mateo-Hernandez
Debtor

Esther Wilson
Plaintiff
v.
Wilvin J Mateo-Hernandez
Defendant

**COMPLAINT FOR NON-DISCHARGEABILIT**
11 U.S.C. §523 (a)(2), 11 U.S.C. §523 (a)(4), 11 U.S.C. §523

1.  Plaintiff, Esther Wilson, files this Complaint pursuant to 11
    §523 (a)(4), 11 U.S.C. §523 (a)(6), 11 U.S.C. §1328 (a)(4) a
    support of the requested relief:

2.  This Court has jurisdiction pursuant to 28 U.S.C. 1334 and 2

3.  Venue is properly laid in this district pursuant to 28 U.S.C. §

4.  This matter is a core proceeding pursuant to 28 U.S.C. §157

**INTRODUCTION**

5. This action arises in connection with a civil matter pending in
ESX-L-000999-22.

6. The debtor owes Esther Wilson compensatory damages in the

7. The debtor owes Esther Wilson punitive damages, amount to

8. Esther Wilson seeks a judgement of non-dischargeability of th

**PARTIES**

9. Plaintiff, Esther Wilson, is the previous girlfriend of the Debt
the debtor.

10. Defendant Wilvin J. Mateo-Hernandez is the Debtor in this matter and the previous boyfriend of Esther Wilson.

## FACTUAL ALLEGATIONS

11. Wilvin J. Mateo-Hernandez and Esther Wilson were involved in a dating relationship beginning in July of 2021 until their last recorded contact via text message exchanged in November of 2021.

12. Esther Wilson filed a Complaint in the Superior Court of New Jersey seeking relief on February 22, 2022 for $50,000.

13. The matter has received a Judgement in Superior Court Docket No. ESX-L-000999-22 for $50,000 compensatory damages, and punitive damages, amount to be determined up to $350,000.

14. The matter ESX-L-000999-22 is currently stayed due to the automatic stay upon Debtor's strategic filing of Chapter 13 Bankruptcy on December 22, 2023.

15. The Debtor did not list an unsecured creditor debt to Esther Wilson in any amount in their filing, nor allow for monies within their plan to pay unsecured creditor claims.

16. Upon information and belief, Debtor filed for Chapter 13 Bankrupcy to avoid repayment of compensatory damages and punitive damages from ESX-L-000999-22.

17. Upon information and belief, Debtor obtained the money by way of fraud, abuse and conduct likely to cause harm. (Ref. Decision for ESX-L-000999-22, decision section 14 lines 1-25, decision section 15 lines 1-25, decision section 16 lines 1-25, decision section 17 lines 1-25, decision section 18, 1-16).

## FIRST COUNT

18. Plaintiff, Esther Wilson repeats and realleges all paragraphs above as if fully set forth herein.

19. Pursuant to BANKRUPTCY LAW-11 U.S.C. § 523(a)(2)(A)-EXCEPTIONS TO DISCHARGE-The United States Supreme Court held that when a debtor incurs a debt for punitive damages awarded as a result of the debtor having fraudulently obtained money, property, or services and the debtor subsequently seeks relief from all his debts by filing for bankruptcy, that punitive damage award will not be dischargeable under § 523(a)(2)(A) of the Bankruptcy Code.

20. U.S.C. Bankruptcy code defines this as: *"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— (1) for a tax or a customs duty— (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed; (B) with respect to which a return, or equivalent report or notice, if required— (i) was not filed or given; or (ii)*

*was filed or given after the date on which such return, report, or notice was last due, under*
*applicable law or under any extension, and after two years before the date of the filing of the*
*petition; or (C) with respect to which the debtor made a fraudulent return or willfully attempted*
*in any manner to evade or defeat such tax; (2) for money, property, services, or an extension,*
*renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false*
*representation, or actual fraud, other than a statement respecting the debtor's or an insider's*
*financial condition;"*

## SECOND COUNT

21. Pursuant to BANKRUPTCY LAW 11 U.S.C. §523 (a)(4), The United States Supreme Court
held that when a debtor incurs a debt "(4) for fraud or defalcation while acting in a fiduciary
capacity, embezzlement, or larceny;" will not be dischargeable under § 523(a)(4) of the
Bankruptcy Code.

22. U.S.C. Bankruptcy code defines this as: *"(4) for fraud or defalcation while acting in a*
*fiduciary capacity, embezzlement, or larceny;"*

## THIRD COUNT

23. Pursuant to BANKRUPTCY LAW 11 U.S.C. §523(a)(6), "for willful and malicious injury by
the debtor to another entity or to the property of another entity;"

24. U.S.C. Bankruptcy code defines this as: (6), *"for willful and malicious injury by the debtor to*
*another entity or to the property of another entity;"*

## FOURTH COUNT

25. Pursuant to BANKRUPTCY LAW 11 U.S.C. §1328 (a)(4) debts obtained by way of fraud
are not dischargeable.

26. U.S.C. Bankruptcy code defines this as: *"(4) for restitution, or damages, awarded in a civil*
*action against the debtor as a result of willful or malicious injury by the debtor that caused*
*personal injury to an individual or the death of an individual."*

## FIFTH COUNT

27. The debtor owes Plaintiff these damages as determined during The Hon. Thomas M. Moore,
P.J.Cv. trial held December 14, 2023 in the Superior Court of New Jersey, since they were
obtained by way of fraud. (Official transcript from trial, attached).

28. ESX-L-000999-22 ORDER FOR JUDGMENT states the following:
     "IT IS, on this 5th day of January , 2024, ORDERED AND ADJUDGED as follows:
     1. Judgment in the amount of $50,000 on the First Count of the Complaint is entered in
     favor of Plaintiff against Defendant.

2. Judgment in the amount of $50,000 on the Fourth Count of the Complaint is entered
in favor of Plaintiff against Defendant.

3. Punitive Damages are awarded to Plaintiff on the Fourth Count of the Complaint.

4. Plaintiff is given 30 days to conduct discovery on Defendant's financial contents."

## SIXTH COUNT

29. Upon information and belief, Debtor obtained the money by way of fraud. (Ref. Pg 8-9 of
Decision for ESX-L-000999-22, decision section 14 lines 1-25; decision section 15 lines 1-12)

30. Court record from ESX-L-000999-22 states:

"Decision 14

1 THE COURT: Okay, so we had a breach of
2 contract absolutely. Compensatory damages for $50,000.
3 There was a promise. It was breached. It never paid
4 back. Breach of contract 100 percent credible. Zero
5 percent cred -- credible on the defense.
6 I also think plaintiff met their burden of
7 proof on fraud. Plaintiff seeks to recover damages
8 which she believes and claims she sustained as a result
9 of misrepresentations made to him -- to her by the
10 defendant.
11 "One who represents is true which is false
12 with intent to deceive the person to whom the
13 representation is made is liable to that person if she
14 believing the representation to be true and justifiably
15 relying upon it suffers damage."
16 She did that. I just went over that. She
17 got into this relationship, fell in love with him
18 completely and totally, believed everything she -- he
19 said, deceitful lies that he wasn't married, that he
20 worked for the CIA, that he was going to invest it and
21 make tons of money over it.
22 All her -- her version much more credible.
23 She meets her burden of proof to establish by the
24 higher standard of proof clear and convincing evidence
25 of those elements. He made a false representation of

Decision 15

1 fact to her. He made a dozen false representations of
2 fact to her. He had to know or believed it to be
3 false. I don't know what was motivating him to lie
4 about being a CIA agent or threatening, menacing her
5 the way he did, intended to deceive her, and that she
6 believed and justifiably relied upon those statements
7 that she was going to get her money back and was

*(Continued Decision 15)*
8 induced to act in that manner, and there was damage.
9 There was the 50,000 damage. So the burden is met on
10 the fraud count.
11 And let me just see if I missed any findings
12 of fact. I think I've been pretty thorough.

## SEVENTH COUNT

31. Upon information and belief, Debtor owes punitive damages (Ref. Pg 9 of Decision for ESX-L-000999-22, decision section 16 lines 10-25).

32. Court record from ESX-L-000999-22 states:
"Decision 16
10 So, punitive damages, I believe she's
11 entitled to punitive damages. What are punitive
12 damages? What are required? We have a statute. We
13 have a court rule. The statute is N.J.S.A. 2A:15-5.9,
14 the Punitive Damages Act. It requires the following
15 requirements, procedural requirements.
16 Number one, punitive damages must
17 specifically be prayed for in the complaint. They are.
18 Consistent with Herman versus Sunshine Chemicals, 133
19 N.J. 329, 342, Supreme Court 1993.
20 The Trial Court -- and I'm going to do this
21 -- must conduct a bifurcated trial on punitive damages.
22 In other words, the punitive damage claim must be tried
23 after the liability and damage claim. Compensatory
24 damages are fixed. Relevant evidence only to punitive
25 damages is not admissible in the liability and

## EIGTH COUNT

33. Upon information and belief, Debtor was harmful, and reckless in his behavior by way of fraud, abuse and conduct likely to cause harm.(Ref. Pg 10-11 of Decision for ESX-L-000999-22, decision section 17 lines 21-25, decision section 18 lines 1-16, decision section 19 lines 19-24)

34. Court record from ESX-L-000999-22 states:
"Decision 17
The Court considers all
22 relevant evidence, including the likelihood that
23 serious harm would arise from the conduct. I
24 absolutely find that. You don't borr -- you don't give
25 somebody $50,000 and then not pay it back and have the

Decision 18
1 emotional abuse that she had to -- to sustain as a
2 result of this activity.
3 Reckless disregard of the likelihood that
4 such serious harm would arise. I find that too.
5 Absolutely reckless. Fundamental basis of our juris
6 prudence, behavior has consequences. This was
7 despicable behavior by the defendant. There has to be
8 consequences. There has to be punishing consequences.
9 The conduct of the defendant upon learning that his
10 initial conduct would likely to cause harm. Yeah, he
11 asked for more money. That's what he [sic] happened.
12 And the duration of the conduct or any
13 concealment by the defendant. It went on for months,
14 and she finally was clear and firm that she wanted a
15 response as to when the money's coming back, and he
16 gets "shake my head" as a response."

Decision 19
19 So, judgment for the plaintiff on the breach
20 of contract, on the fraud case, punitive damages
21 awarded. Value and amount to be determined after --
22 I'll give you 30 days, sir, so -- and I don't want to
23 hear any nonsense about objections. All of his
24 financial conditions are subject to review.


## <u>NINTH COUNT</u>

35. In addition to monetary damage of $50,000 plus court costs and attorney's fees incurred by the plaintiff, also noted is personal emotional harm and damages resulting in on-going trauma therapy and victim's of crime support on behalf of Esther Wilson as a direct result of the behavior and acts of the defendant Wilvin J. Mateo-Hernandez. He acted knowingly and intentionally to cause personal harm, abuse and distress to the Plaintiff.

<u>WHEREFORE</u> Esther Wilson seeks a judgment against Wilvin J. Mateo-Hernandez as follows:

A. Determining that the Debtor, Wilvin J. Mateo-Hernandez's obligations to her are not discharged; and

B. Granting such other relief as the court deems just and equitable.

Dated: April 5, 2024

Esther Wilson                4/5/2024

ORDER PREPARED AND FILED BY THE COURT

|  |  |
|---|---|
| ESTHER WILSON | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: ESSEX COUNTY |
| Plaintiff | DOCKET NO: ESX-L-999-22 |
| | CIVIL ACTION |
| v. | **ORDER FOR JUDGMENT** |
| WILVIN MATEO-HERNANDEZ | |
| Defendants | |

This MATTER having been brought before the Court by way of Complaint against WILVIN MATEO-HERNANDEZ and the Court, having conducted a non-jury trial on this case, and having heard all testimony of the parties, as well as the evidence admitted at the trial on December 14, 2023; and for the reasons stated on the record; and for good cause shown; this order memorializes the Court's ruling from December 14, 2023;

**IT IS**, on this 5th day of January , 2024, **ORDERED AND ADJUDGED** as follows:

1. Judgment in the amount of $50,000 on the First Count of the Complaint is entered in favor of Plaintiff against Defendant.

2. Judgment in the amount of $50,000 on the Fourth Count of the Complaint is entered in favor of Plaintiff against Defendant.

3. Punitive Damages are awarded to Plaintiff on the Fourth Count of the Complaint.

4. Plaintiff is given 30 days to conduct discovery on Defendant's financial contents.

5. Plaintiff shall, within 10 days after the completion of this discovery, file a Brief arguing with supporting documentation the amount of punitive damages that should be awarded.

6. Defendant may submit opposition to the amount of punitive damages requested within 14 days after receipt of Plaintiff's brief.

7. The Court shall schedule argument of this issue after receipt of all papers.

8. Defendant's counterclaim is dismissed on the record.

9. All other counts of the complaint are dismissed.

Dated: 1/5/2024

/s/ Thomas M. Moore
The Hon. Thomas M. Moore, P.J.Cv.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
ESSEX COUNTY
DOCKET NO. ESX-L-000999-22
APP. DIV. NO. _____

| | | |
|---|---|---|
| ESTHER WILSON, | : | |
| | : | |
| Plaintiff, | : | TRANSCRIPT |
| | : | |
| v. | : | OF |
| | : | |
| WILVIN JOEL MATEO-HERNANDEZ, | : | TRIAL |
| | : | (EXCERPT OF DECISION) |
| | : | |
| Defendant. | : | |

Place:    Historic Courthouse
          470 Dr. MLK, Jr. Blvd.
          Newark, NJ  07102

Date:     December 14, 2023

BEFORE:

    HONORABLE THOMAS M. MOORE, P.J.Cv.

TRANSCRIPT ORDERED BY:

    ESTHER WILSON

APPEARANCES:

    JAY J. FREIREICH, ESQ. (Freireich LLC)
    Attorney for the Plaintiff

    HOWARD B. LEOPOLD, ESQ. (Leopold Law, LLC)
    Attorney for the Defendant

Transcriber:  Sandra Hicks, AOC 711

Agency:       KLJ Transcription Service, LLC
              P.O. Box 8627
              Saddle Brook, NJ  07663
              (201) 703-1670
              www.kljtranscription.com
              info@kljtranscription.com

              Digitally Recorded
              Operator - Surya-Nicole Bond

<u>I N D E X</u>

<u>PAGE</u>

<u>THE COURT</u>:

Decision                                                  3

```
 1              (Requested excerpt commenced at 1:55 p.m.)
 2              THE COURT:  Okay.  This will be the Court
 3     opinion.  I would ask that no one interrupt me during
 4     the opinion.  I'll try to answer any questions
 5     afterward.
 6              This case started by the filing of a
 7     complaint by Ms. Wilson against the defendant on or
 8     about February 7th, 2022.  She was self-represented at
 9     that time.
10              THE PLAINTIFF:  Yes, I was.
11              THE COURT:  She -- that -- that's fine.  I'm
12     just making a record.
13              So, there was an answer to that and a
14     counterclaim.  You'll hear a lot more about this, but I
15     agree totally with counsel's last statement, it's an
16     outrageous counterclaim after I review all of this
17     evidence and see the relationship of the parties.
18              But the counterclaim states the following:
19     Paragraph three, "In or about August 22 at plaintiff's
20     specific insistence and request, defendant appeared in
21     plaintiff's music videos and photographs.  In
22     consideration, plaintiff was to pay defendant money
23     commensurate with the normal schedule of fees.
24     Plaintiff -- defendant has fully performed.  Plaintiff
25     has breached the agreement."  He testified today that
```

                              Decision                    4

```
 1     it was 50,000, conveniently a $50,000 number.  I'll get
 2     into that a lot later, but I wanted to point that out.
 3              But the complaint, Ms. Wilson hired a lawyer,
 4     and the complaint was amended pursuant to the court
 5     rules, further defined what the allegations were, added
 6     more counts of the complaint, fraudulent inducement,
 7     fraud, breach of contract, punitive damages, unjust
 8     enrichment, and so forth.
 9              So, when I -- folks came to court back in
10     September, October, whenever it was, and they couldn't
11     settle, I assigned the case to myself.  I'm the
12     presiding judge here.  I could have assigned it out.  I
13     wanted to keep it.
14              I ordered the production of all the exhibits,
15     and there are quite a few.  And I don't select what the
16     exhibits are.  The parties do.  The lawyers do.  And I
17     reviewed those.  And I'll go back to what my thoughts
18     were beforehand, which is it's shocking to me this case
19     didn't settle.  But regardless, it didn't.
20              So what do I have to do?  Really, in some
21     ways it is what she says as opposed to what he says.
22     What does she say?  She says -- they agree on some
23     things.  They meet on the dating app Tinder.  They
24     start a very -- he agrees with that.  They start a very
```

1  testimony, it was an intense relationship emotionally,
2  mentally, and physically.  Defendant said it's an
3  intense physical relationship, as he testified to in
4  quotes, "all the sex stuff," end of quotes.
5       And counsel phrased -- there's no dispute she
6  gave him 50,000 in that approximate five-week time
7  period, both in cash and checks.  And counsel phrased
8  it -- and in some ways it's correct and other ways it
9  goes way beyond that.  Was it supposed to be a gift, or
10 was it supposed to be a loan?
11      And in looking at credibility -- and
12 ironically, I mean, this is a very unusual case.  You
13 don't have many Law Division trials where there's
14 already a published Family Law case on the same issues.
15 This is Judge Sanders' finding where he didn't find
16 domestic violence, but he did quote some law which I
17 use all the time.  I'll use what is in his opinion
18 because this is the model jury charges.
19      What do you determine in credibility of
20 witnesses?  The following factors the Supreme Court
21 tells us to look at.  The witness interest, if any in
22 the income -- outcome of the accident, the accuracy of
23 the recollection, the ability to know what he and she
24 is talking about, the reasonableness of the testimony,
25 the witness's demeanor on the stand, the witness's

Decision                          6

1  candor or evasion, the witness's willingness or
2  reluctance to answer, the inherent believability of the
3  testimony, the presence of any inconsistent or
4  contradictory statements.
5       Judge Sanders went on to remark in this
6  opinion the following.  "Overall, the Court finds that
7  the testimony of E.W.," Esther Wilson, we use initials
8  in Family case not to make public the identity of the
9  parties to protect their identity of any victims.  And
10 I do find that she's a victim here.
11      "The Court finds the testimony of E.W. --
12 E.W. was credible and truthful.  Her testimony was
13 consistent and forthright.  Her recollection was
14 candid, reasonable, and not evasive in any way.  Her
15 testimony was believable."
16      I agree with all that.  My personal
17 observations of sitting here and watching her testify
18 for the better part of an hour and a half she answered
19 the questions directly.  She had a consistent story.
20 She stood up on cross-examination, even with very
21 offensive questions about her psychiatric treatment
22 that I think she sustained as a result of this
23 relationship.  She was credible.  She was consistent.
24 She was forthright.

```
 1    the text messages, totally consistent.  And you can go
 2    through -- and that's ironic.  The parties get to pick
 3    the messages that they want to produce to the Court.
 4    As we said, there's 19,000 of them.  Pretty much every
 5    text messages that Ms. Wilson produced are relevant.
 6    Almost everyone the defense produced, at least on these
 7    issues, were not relevant.
 8             There were very few of the same text
 9    messages.  A lot of these are the sexual pictures, the
10    love talk.  Quite frankly, some domestic violence
11    control issues when he apparently gets upset at her
12    dating other people at some point in the relationship.
13    Not relevant to the $50,000 but relevant to the
14    credibility of the testimony.  As opposed to Ms.
15    Wilson's testimony, I don't find almost everything that
16    the defendant said was credible whatsoever.  And it's
17    all contradicted, which I'll go into some more detail
18    with the text messages.
19             It's -- I mean, as for the -- the loan, first
20    it's a gift.  Then it's possibly an investment.  We
21    have the text message that sort of starts this out.
22    They haven't even met yet.  It's P-23.  Her to him,
23    "Since you say all these nice things," they haven't met
24    yet, "but how about if I was like yo, babe, as you know
25    I invest, and I said hey, let," I think it's "lend me
```

Decision                                    8

```
 1    this 5K," et cetera, "and we to invest into something,
 2    would that be your answer?  Curious to know this, as
 3    other night you got a little spicy."
 4             Her answer, "I would like -- I would be like
 5    you're a professional and I trust your judgment, and
 6    thanks for including me but let -- work on the good
 7    night, good mornings, and first -- a first date."
 8             And this one I -- quite frankly when I first
 9    read it, I had to ask my law clerk because I'm not an
10    electronic guy.  I thought this had to be from her to
11    him, but it's from him to her when we heard the
12    testimony.  The dark is her in this, not the light.
13             He writes back, "I'm just curious because if
14    I can't trust you with money, I can't trust you with
15    sex and nothing.  Just saying."  Her response, "You can
16    trust me with anything."  Why is he saying that if it's
17    a gift of $5,000?  It's her money.  It makes no sense.
18             And I find her testimony about the threats,
19    the intimidation, the crazy stories about assassins and
20    43 people, 42 people murdered by him, I find her
21    version much more credible than his.  I think that
22    happened.  There's no text on it, but it's this
23    terrible circumstance.  Red flags should have been up
24    all over the place for Ms. Wilson.  They haven't met
```

```
 1          For whatever reason, she fell in love with
 2    him.  She was emotionally committed to him.  She was
 3    physically committed to him.  She gave her {sic} the
 4    money.  I think he was saying this -- that is
 5    completely in my view corroborated by the text messages
 6    about the CIA and FBI.
 7          He testified and wouldn't look at me when I
 8    asked him a question, "Did you ever talk about being a
 9    CIA agent?"  He said no, but his eyes were in the
10    ground.  He wasn't telling the truth then.  And the
11    text messages totally and completely confirm that.
12          For instance, why is he gonna or is she gonna
13    -- but he's going to write this.  She responded to it.
14    N word, "I need you to learn shit before you can feel
15    with this.  Okay, for example, what are you to the
16    people break into the house asking for my name?  A gun
17    in the head?  Fuck.  You had me type that shit, man.
18    Erase it all."  That's normal talk between two people
19    in a romantic relationship?  No, that's totally
20    consistent with one person saying they're a CIA agent
21    and you're at risk, your family is at risk.
22          I'm sure if I asked Ms. Wilson a question
23    right now what should you have done the minute he asked
24    you for money, was hang up the phone and run the other
25    way, but that didn't happen.  She fell in love with
```

Decision                                    10

```
 1    him.  She trusted him.  She loved him.  She gave him
 2    the money.
 3          I find totally credible her story that it was
 4    a loan, she wanted it back.  Now, if they stayed
 5    happily ever after -- and the marriage is another
 6    issue, of course, where she's consistent, he's
 7    inconsistent.  I find her consistent that he told her
 8    that he was single when this all started and then,
 9    well, he was married and maybe separated and, well,
10    maybe they're -- they're still married but they live in
11    separate rooms and then they're together and then he
12    gets all domestic "violencey," if that's a -- even a
13    phrase when you read the messages and evidence about
14    what she's doing with other men and that she has to get
15    a panel test, which I think is a -- a sexual
16    transmitted disease test.
17          Totally consistent with her bizarre,
18    unfortunate, but I got to look at credibility.  I got
19    to look at actions, and her actions in my view 100
20    percent more credible than his.
21          And it's all for the factors that I -- I've
22    read into the record, the jury charge.  She was
23    consistent, he was inconsistent.  She looked me in the
24    eye, he didn't look me in the eye.  Just things you --
```

```
 1            Another thing that's bizarre and I had to
 2  tell him my thoughts on this.  When we get to the
 3  repairs to the house, now this is a loan.  I mean, it's
 4  not a loan.  It's a gift.  They're together, I don't
 5  know, for a month or so, and there's no talk of any
 6  paying back.  Then why in God's name does she give him
 7  a list of things in the house to repair?  Out of the
 8  goodness of his heart he's going to repay it after
 9  getting 50,000 or is that maybe I don't have the money
10  but I'll fix your house because I'm handy?  That makes
11  a lot more sense than out of your goodness of the heart
12  when you're married with kids have taken $50,000 and
13  just out of the goodness of your heart you're going to
14  do these repairs referenced in here.  Makes zero sense.
15            Her side makes sense.  She got burned for
16  50,000.  She's looking to get some money back.  She's
17  still in love with him.  She may have been in love with
18  him until November.  It seems like that way.  I don't
19  know.  It doesn't really matter, but it explains
20  totally how she behaved in relation to his behavior.
21  She was in love with him.  She was crazy about him.
22  She was frightened of him.  She believed what he said.
23            And even after -- and this was, again, just
24  absurd testimony from the defendant.  The text message
25  on E-32 -- P-32 talks about after repaying the debt,
```

Decision                                          12

```
 1  his debt, why would I, you're a great person, he's not
 2  going to leave.  It said that.  It's the money he owes
 3  her, not other people.  Why is he talking about
 4  repaying a debt to anyone other than her?  Makes no
 5  sense.
 6            And she's clearly in love with him now.
 7  Right before that, "If the man I love tries to walk
 8  away from me, yeah, I'm going to be pissed."  All those
 9  red flags should have been off by October 4th, but they
10  weren't.
11            And then we go into the development of their
12  relationship vis-a-vis her willingness to continue the
13  relationship after all this, but the threats of him
14  having an adverse reaction from his wife about the
15  children.  "Did you also forget that her sister," his
16  wife, "is a hijab-ranking Child Protective Service
17  agent?  Let that sink in."  And she's like accepting of
18  that.  "Poppy, we talk about it more."  So she's
19  willing to work with it, but he clearly isn't.
20            But it continues, and it's clear when you
21  read the rest of the text messages -- again, all
22  relevant, all totally consistent with her testimony
23  that at the end of it she's finally -- the lights are
24  starting to come on in her life.  She's saying on
```

1   haven't spoke and -- and I had some time to think.
2   When we met and started dating you lied to me about
3   being married, being together with your wife, and
4   living together.  You told me you were single, never
5   married, didn't live together, and then the story kept
6   changing.  Once I found out that you lied to me, things
7   were never quite the same.  Now, with that being said,
8   you borrowed," borrowed, "a lot of money from me,
9   $50,000 in total.  When do you plan on paying me back?"
10          And his response, a great response, "And you
11  keep on.  Don't you, shake my head.  You just don't
12  stop instead of peace."  Well, he owes her $50,000.  I
13  wouldn't stop either.
14          How she got there we could question.  Naive
15  maybe comes to mind.  Blind love maybe comes to mind.
16  I think if nothing else she learned a tremendous and
17  very hurtful lesson in this relationship.
18          But regardless, she has overwhelmingly met
19  her burden of proof of a breach of contract, oral
20  contract, for not gift of this money.  It turns, as I
21  said, from gift to investment to payment for the video
22  that was never published anywhere.  Ridiculous.
23          Counterclaim is dismissed.  Christopher.
24          COURT CLERK:  (Inaudible) it's under
25  (inaudible).

Decision                                    14

1          THE COURT:  Okay, so we had a breach of
2   contract absolutely.  Compensatory damages for $50,000.
3   There was a promise.  It was breached.  It never paid
4   back.  Breach of contract 100 percent credible.  Zero
5   percent cred -- credible on the defense.
6          I also think plaintiff met their burden of
7   proof on fraud.  Plaintiff seeks to recover damages
8   which she believes and claims she sustained as a result
9   of misrepresentations made to him -- to her by the
10  defendant.
11         "One who represents is true which is false
12  with intent to deceive the person to whom the
13  representation is made is liable to that person if she
14  believing the representation to be true and justifiably
15  relying upon it suffers damage."
16         She did that.  I just went over that.  She
17  got into this relationship, fell in love with him
18  completely and totally, believed everything she -- he
19  said, deceitful lies that he wasn't married, that he
20  worked for the CIA, that he was going to invest it and
21  make tons of money over it.
22         All her -- her version much more credible.
23  She meets her burden of proof to establish by the
24  higher standard of proof clear and convincing evidence

```
 1    fact to her.  He made a dozen false representations of
 2    fact to her.  He had to know or believed it to be
 3    false.  I don't know what was motivating him to lie
 4    about being a CIA agent or threatening, menacing her
 5    the way he did, intended to deceive her, and that she
 6    believed and justifiably relied upon those statements
 7    that she was going to get her money back and was
 8    induced to act in that manner, and there was damage.
 9    There was the 50,000 damage.  So the burden is met on
10    the fraud count.
11            And let me just see if I missed any findings
12    of fact.  I think I've been pretty thorough.
13                      (Pause)
14            THE COURT:  Just bizarre, I'm sorry.  Here's
15    9/30.  You said it doesn't come up to the end, 9:30,
16    her, "The only thing I invested into the relationship
17    other than my love is the 50,000 you manipulated me
18    into giving you."  That's what happened.  That's her
19    text message real time.  "Let me know how you're
20    getting that back to me."
21            And his, you know, next week, you know, it
22    was a gift.  "You love me yet don't know to talk on the
23    phone or for me to go.  You're insane."  That's the
24    answer.  And that's September.
25            Domestic violence stuff I referenced is in
```

Decision                                              16

```
 1    early October, someone named Raffie (phonetic) that
 2    he's not all that happy with.
 3            Fortunately, she didn't give more money on
 4    the one I mentioned, this lawsuit issue.  Makes no
 5    sense whatever he answered before about some auto
 6    accident with the added insurance on but he needs more
 7    money.  Yeah, I mean, this -- you can read almost any
 8    text message.  Her response is sincere, a cry for help.
 9    His is a lie or anger.
10            So, punitive damages, I believe she's
11    entitled to punitive damages.  What are punitive
12    damages?  What are required?  We have a statute.  We
13    have a court rule.  The statute is N.J.S.A. 2A:15-5.9,
14    the Punitive Damages Act.  It requires the following
15    requirements, procedural requirements.
16            Number one, punitive damages must
17    specifically be prayed for in the complaint.  They are.
18    Consistent with Herman versus Sunshine Chemicals, 133
19    N.J. 329, 342, Supreme Court 1993.
20            The Trial Court -- and I'm going to do this
21    -- must conduct a bifurcated trial on punitive damages.
22    In other words, the punitive damage claim must be tried
23    after the liability and damage claim.  Compensatory
24    damages are fixed.  Relevant evidence only to punitive
```

```
 1    compensatory damages.
 2              That's why I cut off the testimony about what
 3    he makes now.  It's not really relevant.  It has some
 4    tangential relevance about why he's borrowing all this
 5    money if he's making $150,000 a year but that's -- I
 6    cut it off at that part.
 7              So, punitive damage trial is only conducted
 8    if compensatory damages have been awarded.  I am on the
 9    count that asked for the punitive damages.  These are
10    not nominal damages.  These are hard, out-of-pocket
11    damages that the parties agreed were paid by her to
12    him, the $50,000.
13              There's a cap on punitive damages, five times
14    the amount of compensatory damages or $350,000,
15    whichever is greater.  The jury or the judge in this
16    case -- that doesn't really apply.  That's a jury issue
17    with they know about the cap.
18              And as I mentioned during the trial, there is
19    relevance in the consideration of a punitive damages as
20    to the financial condition of the defendant.  The
21    amount of punitive damages.  The Court considers all
22    relevant evidence, including the likelihood that
23    serious harm would arise from the conduct.  I
24    absolutely find that.  You don't borr -- you don't give
25    somebody $50,000 and then not pay it back and have the
```

Decision                                          18

```
 1    emotional abuse that she had to -- to sustain as a
 2    result of this activity.
 3              Reckless disregard of the likelihood that
 4    such serious harm would arise.  I find that too.
 5    Absolutely reckless.  Fundamental basis of our juris
 6    prudence, behavior has consequences.  This was
 7    despicable behavior by the defendant.  There has to be
 8    consequences.  There has to be punishing consequences.
 9    The conduct of the defendant upon learning that his
10    initial conduct would likely to cause harm.  Yeah, he
11    asked for more money.  That's what he [sic] happened.
12              And the duration of the conduct or any
13    concealment by the defendant.  It went on for months,
14    and she finally was clear and firm that she wanted a
15    response as to when the money's coming back, and he
16    gets "shake my head" as a response.
17              So she goes to the authorities.  She goes to
18    the Bloomfield Police.  She goes to the FBI.  It's not
19    really relevant what happens with those cases.  But she
20    is not -- if she waited five years maybe and then came
21    to court, that might be something.  But she came to
22    court within -- the complaint was filed I think in
23    April, the original complaint.  So it's all there.
24              The only issue is I have to consider the
```

1  the financial condition, there's a case <u>Herman versus</u>
2  <u>Sunshine Chemical</u>, 133 N.J. 329, 345.  We've heard some
3  testimony about his current employment, but I'm going
4  to give the plaintiff, if you wish, 30 days to take
5  discovery on his financial condition, and you can
6  submit afterwards what your position is on the amount
7  of appropriate punitive damages.
8          The defendant can respond.  I -- I am sure
9  the defendant is going to object to any award.  And the
10 good part of our system is everything we say in court
11 is being recorded, so you can take an appeal from that.
12         But if you want to be heard on the amount of
13 punitive damages, I'll give you another whatever you
14 need, two weeks, to respond after they tell me what
15 they think the appropriate financial penalty should be
16 to this defendant, and I will make a decision after I
17 hear that.  I may hear argument, I may not.  But that's
18 the way we're going to move on this case.
19         So, judgment for the plaintiff on the breach
20 of contract, on the fraud case, punitive damages
21 awarded.  Value and amount to be determined after --
22 I'll give you 30 days, sir, so -- and I don't want to
23 hear any nonsense about objections.  All of his
24 financial conditions are subject to review.
25         And I'm not awarding attorney's fees because

---

Decision                                          20

1  I don't have any basis to award attorney's fees.  I'm
2  not awarding prejudgment interest.  I'm not sure I can.
3  But I am certain I can award punitive damages, and I
4  think that -- I don't think it's ever going to
5  compensate Ms. Wilson for what she went through in
6  this, but at least the best we can do in this court is
7  make a financial award that will at least help with
8  some of the circumstances and at a minimum get back to
9  her the 50,000 that she gave him in August and
10 September of '21.
11         Okay, I'll enter an order accordingly.  I
12 haven't made a copy of these.  I want to make a copy.
13 I'll have my law clerk bring them back out.  I ask that
14 you listen to Officer Cross as to how you should depart
15 today.
16         MR. FREIREICH:  Judge, just a question on the
17 timing.  Did you want to hear oral testimony on the
18 application or on the papers?
19         THE COURT:  Well, I'm -- I'm entitled -- I
20 mean, I'm giving them -- I don't know if he's going to
21 take it up or not, but if -- instead of just saying
22 whatever he's going to testify to, none of which I
23 found credible, if you want to take some discovery on
24 what his financial.  If he owns a house, if he has any

```
 1              MR. FREIREICH:  No, but in terms of once
 2     that's done and we come back to you, how do you want
 3     that?
 4              THE COURT:  Once that's done, then I will --
 5     going to ask the plaintiff to submit some writing
 6     saying here's what I found out, Judge.  One, two,
 7     three, four.  I think X dollars should be awarded to
 8     the plaintiff.  You get that and you can either not
 9     comment or comment and say that's not what he has, he
10     only has Y dollars, and while we believe there is no
11     punitive damages it certainly shouldn't be X dollars.
12              I'll review all that.  If you want to be
13     heard on it, including testimony, it's not just going
14     to be testimony, it's going to be testimony with
15     documents, if that's what you want to do, sir.  I don't
16     know what -- if he really has no money, it could be
17     good money after bad.  So, you know, you got to make a
18     judgment like we do in any case, is it worth the
19     effort.  But if you feel it is, I'll hear you.  And
20     I'll give the defendant the right to object to it and
21     be heard on it.
22              But I think it's clear, no doubt in my mind,
23     that punitive damages are required in this case.
24              MR. FREIREICH:  Thank you, Your Honor.
25              THE COURT:  Thank you.
```

```
                         Decision                      22

 1              MR. FREIREICH:  Thank you for your time, Your
 2     Honor.
 3              (Requested excerpt concluded at 2:25 p.m.)
 4                          * * * * *
 5
 6                         CERTIFICATION
 7
 8         I, SANDRA HICKS, the assigned transcriber, do
 9     hereby certify the foregoing transcript of proceedings
10     on CourtSmart, Index No. from 1:55:38 to 2:25:37, is
11     prepared to the best of my ability and in full
12     compliance with the current Transcript Format for
13     Judicial Proceedings and is a true and accurate
14     compressed transcript of the proceedings, as recorded.
15
16
17
18       /s/ Sandra Hicks                    AOC 711
19         Sandra Hicks                     AOC Number
20
21
22     KLJ Transcription Service            3/24/24
23        Agency Name                         Date
24
```